TENTATIVE RULING

ISSUED BY JUDGE MARGARET M. MANN

| | |
|---|---|
| Adversary Case Name: | ANICE PLIKAYTIS v. MERCATOR FINANCIAL GROUP, INC. & WEST VALLEY FINANCIAL MANAGEMENT, INC. |
| Adversary Number: | 12-90346-MM |
| Case Number: | 10-07659-MM11 |
| Hearing: | 11:00 AM Thursday, February 27, 2014 |
| Motion: | PRE-TRIAL STATUS CONFERENCE (fr. 11/13/13) |

Status Conference is continued to March 27, 2014 at 11:00 a.m., Department 1 for further briefing. The parties' additional briefing is due by March 13, 2014 and any reply to that briefing is due March 20, 2014.

As noted in the Court's tentative ruling dated November 13, 2013, the Court intended to determine the issue of standing and requested additional briefing regarding standing from Anice Plikaytis ("AP") and the Post Confirmation Estate Fiduciary, Christopher Barclay ("PCEF") as part of the pretrial process under Fed. R. Civ. P. 16(c)(1), incorporated by reference into Bankruptcy Rule 7016. The Court gave both parties a full and fair opportunity to develop and present facts and legal arguments in support of each of their position, which they presented by way of their proposed findings of fact and conclusions of law.   See *Portsmouth Square, Inc. v. Shareholders Protective Comm.*, 770 F.2d 866, 869-870 (9th Cir. 1985); *see also Osborne v. County of Riverside*, 323 Fed. Appx. 613 (9th Cir. 2009); *Granite State Ins. Co. v. Smart Modular Techs., Inc.,* 76 F.3d 1023, 1031 (9th Cir. 1996) ("[Rule 52] authorizes the court to enter judgment at any time that it can appropriately make a dispositive finding of fact on the evidence.").

On August 28, 2012, the Court confirmed the joint chapter 11 plan of James Roth (Case #10-07659) and Roth Management Company (Case #10-07663). On October 24, 2013, the Court entered its order on AP's motion to convert the case from chapter 11 to chapter 7.   With all the parties' consent, the Court expanded the post-confirmation agent's powers to include the traditional powers of a trustee.   See Order, James Roth, Case #10-07659, Docket #1002 ("Order"). The Order, at page 4 ¶ 2(h)-(i), states the following:

> The Post-Confirmation Estate Fiduciary shall assume all of the rights, powers and authority (previously delegated to Anice Plikaytis as the Estate Representative) to prosecute the followings claims of the estate:
>
> Adversary Case No. 12-90346; consolidated with adversary case 13-90028
> Adversary Case No. 13-90029
> Adversary Case No. 11-90147; consolidated with adversary case 11-90148
>
> Ms. Plikaytis maintains within those adversaries, those rights as identified as a creditor under the Plan. To the extent Ms. Plikaytis retains standing in those adversaries to pursue creditor rights, the Post-Confirmation Estate Fiduciary shall join as a party plaintiff in order to represent the Estate's interest in the remaining claims. Ms. Plikaytis will also continue as Plaintiff in Adversary Proceeding 10-90359.
>
> Without limiting the rights, powers, or authority of the Post-Confirmation Estate Fiduciary, the following rights, powers and authority previously delegated to Anice Plikaytis under the Plan are revoked: (i) approval of any proposed disbursement, including renovation expenditures and professional fees; (ii) any right she has to be compensated for monitoring activities; and (iii) standing to object to Claims to seek avoidance of fraudulent transfers according to California law, to pursue those claims, rights, and remedies provided for, and commence actions under sections 544,545,547, 548, or 553, of the Bankruptcy Code. Anice Plikaytis will retain only those rights (if any) with respect to such matters than a general unsecured creditor. The Court is not ruling on the scope of Anice Plikaytis' remaining rights at this time, and all parties' rights on that issue are preserved. That issue will need to be raised upon a properly noticed motion.

Because disputes arose immediately on the scope of the respective roles of the Post-Confirmation Estate Fiduciary ("PCEF") and AP, the Court on November 13, 2013, requested additional briefing regarding standing from AP and Barclay. Both parties filed briefing on January 13, 2014, as did Mercator. Debra Roth also appeared to reserve the issue due to the appeal in her own bankruptcy case. Although the Court appreciates that AP cited some case law regarding general principles of standing, it was only marginally apposite to the issue. The PCEF cited no case law in its briefing. As a result, the controlling bankruptcy law on AP's rights as an unsecured creditor that will govern the pending matters was not fully analyzed in the briefing as required and further briefing is necessary.

## Standing of Avoidance Actions

With limited exception, "the bankruptcy code endows the bankruptcy trustee with the exclusive right to sue on behalf of the estate." *See Estate of Spirtos v. One San*

*Bernadino Superior Court*, 443 F. 3d 1172, 1176 (9th Cir. 2006).   Although a bankruptcy court may permit individual creditors to bring a fraudulent transfer action derivatively on behalf of the estate, unsecured creditors have no standing to prosecute such actions in their own right and for their own benefit, even if they would have had standing to do so outside of bankruptcy. *See Hansen v. Finn (In re Curry & Sorensen, Inc.),* 57 B.R. 824, 829 (B.A.P. 9th Cir. 1986); *see also Haskell v. PWS Holding Corp. (In re PWS Holding Corp.),* 303 F.3d 308, 314-316 (3d Cir. 2002*)* (affirming finding that creditor violated confirmation order by pursuing fraudulent transfer claim against another creditor)*; St. Francis County Farmers Ass'n v. Wright (In re Wright)*, 353 B.R. 627, 630-631 (Bankr. E.D. Ark. 2006) (finding an unsecured creditor lacked standing to bring the complaint to set aside fraudulent transfers under the Bankruptcy Code*); In re Sun Cho*, 9 Fed. Appx. 633 (9th Cir. 2001) (creditor did not have standing to bring actions on behalf of the estate); *N.L.R.B. v. Martin Arsham Sewing Co.*, 873 F.2d 884, 888 (6th Cir. 1989) ("[T]o allow a creditor of the bankrupt to pursue his remedy against third parties on a fraudulent transfer theory would undermine the Bankruptcy Code policy of equitable distribution by allowing the creditor 'to push its way to the front of the line of creditors.'").

Normally, bankruptcy avoidance powers terminate when the case is closed or dismissed or when a plan is confirmed; there is no longer any estate representative, or any estate, to benefit from any recovery. Under section 1123(b)(3)(B), however, a chapter 11 plan may provide for the postconfirmation retention and enforcement of the estate's avoidance rights. *See Williams v. Official Unsecured Creditors' Comm. (In re Connolly),* 238 B.R. 475 (B.A.P. 9th Cir. 1999); *Cooper v. Tech Data Corp. (In re Bridgeport Holdings, Inc.)*, 326 B.R. 312 (Bankr. D. Del. 2005).   As a result, any ability to bring a postconfirmation avoidance action must be specified in the plan, and any recovery must be for the benefit of creditors as a group. *Duckor Spradling & Metzger v. Baum Trust (In re P.R.T.C., Inc.),* 177 F.3d 774 (9th Cir. 1999). Thus, when a party seeks to bring a postconfirmation avoidance action, that party must establish that it has been appointed by the plan and that it is acting as the representative of the estate. *Jackson Nat'l Life Ins. Co. v. Greycliff Partners, Ltd.*, 960 F. Supp. 186 (E.D. Wis. 1997) (plan clearly gave creditor right to bring avoidance action on behalf of estate); *Moecker v. Johnson (In re Transit Group, Inc.)*, 332 B.R. 45 (Bankr. M.D. Fla. 2005) ; *AmeriServe Food Distrib., Inc. v. Transmed Foods, Inc. (In re AmeriServe Food Distrib., Inc.)*, 315 B.R. 24 (Bankr. D. Del. 2004). Unless these things can be shown by reference to the plan's explicit terms, a party has no standing to pursue a postconfirmation preference or fraudulent transfer claim. *In re Mako, Inc.*, 985 F.2d 1052 (10th Cir. 1993); *see McFarland v. Leyh (In re Texas Gen. Petro. Corp.)*, 52 F.3d 1330 (5th Cir. 1995) (postconfirmation recovery must be sought for benefit of all creditors, especially unsecured creditors, and not for individual benefit of one creditor; liquidating trustee held to have standing).

This case law, not the general case law cited by AP, is what governs the conduct of the adversaries identified in the Order. AP has no remaining standing to purse any avoidance powers identified in sections 544,545,547, 548, or 553, of the Bankruptcy Code in any matter pending before this Court as she is no longer the estate representative. Upon its review of the other matters pending before the Court in connection with this status conference, this law has similar applicability as discussed below. AP is no longer a party to those avoiding power causes of action and her only role in that regard, consistent with the general standing principles she cites, is to object to any settlements proposed by the PCEF under Bankruptcy Rule 9019. *Dominelli*, 820 F.2d at 317-18.   To the estate the Order needs to be clarified for this purpose, the Court will enter a further order.

**<u>Standing for Claim Objections</u>**

Standing for objections to claims or claims of subordination is less clear.   Section 502(a) of the Bankruptcy Code provides that a claim, proof of which is filed under § 501, is deemed allowed unless a "party in interest" objects. While a "party in interest" clearly has standing to object to claims, the Code does not define "party in interest" Some courts have broadly stated that a party in interest is "anyone who has a legally protected interest that could be affected by a bankruptcy proceeding." *In re FBN Food Servs., Inc.,* 82 F.3d 1387, 1391 (7th Cir. 1996) (quoting *In re James Wilson Associates,* 965 F.2d 160, 169 (7th Cir. 1992)).

That said, the law of this circuit recognizes that the trustee, as the estate representative has the larger role in these matters. *Lawrence v. Steinford Holding B.V. (In re Dominelli*), 820 F.2d 313, 317 (9th Cir. Cal. 1987) (quoting Collier on Bankruptcy ¶ 502.01), explained:

> "Ordinarily, the trustee is the optimal party in interest to raise objections on behalf of the estate. As Collier states: 'The right of a creditor to object to the allowance of another creditor's claim should be undisputed on principle. Yet the needs of orderly and expeditious administration do not permit the full and unfettered exercise of such right. The most important qualification attached to the right of a creditor to object is that it is the trustee who acts as the spokesman for all the creditors in discharge of the trustee's duty unless the trustee refuses to take action.'"

This concept was also recognized in an unpublished Bankruptcy Appellate Panel decision, *T. Jones, Inc. v. Simmons (In re Simmons*), 2005 Bankr. LEXIS 2954, at *9-10 (B.A.P. 9th Cir. 2005):

> "The majority of courts have ruled that, in a case where there is a bankruptcy trustee, general unsecured creditors do not have standing to object to claims of other creditors, unless the trustee has refused after request to object to the claim, and the court has then authorized the creditor to object." *Citing In re Thompson*, 965 F.2d 1136, 1147 (1st Cir. 1992) (individual creditor not generally given leave to object to claims unless chapter 7 trustee refuses to object after request and court permits creditor to object in place of trustee); *In re Manshul Constr. Corp.*, 223 B.R. 428, 430-31 (Bankr. S.D.N.Y. 1998) (majority rule is that individual creditor lacks standing to object to claim, to promote orderly administration of justice); *In re Bakke*, 243 B.R. 753, 755 (Bankr. D. Ariz. 1999) ("The Court finds and concludes on this record that the line of cases which hold that when a trustee has been appointed, the debtor or other creditors do not have standing to object to the claims of another creditor unless specifically granted by the Bankruptcy Court are both well reasoned and on point in this particular case.").

The PCEF here states he and AP "must act jointly to pursue this adversary proceeding as it relates to the equitable subordination and claims objections."   Since none of these cases were discussed, the Court is unclear what that statement means in the context of the controlling law, the PCEF must clarify his position in his further briefing.

### **Standing for Subordination Claims**

For an individual creditor to have standing to assert a claim for equitable subordination, the creditor must have suffered a particularized injury, rather than a general harm to the estate or all creditors. *Variable-Parameter Fixture Dev. Corp. v. Comerica Bank-California (In re Morpheus Lights, Inc.)*, 228 B.R. 449, 453 (Bankr. N.D. Cal. 1998); *see also In re Granite Partners, L.P.*, 210 B.R. 508, 514 (Bankr. S.D.N.Y. 1997). A generalized claim is the property of the estate, and must therefore be brought by the trustee or other representative of the estate. *Morpheus Lights*, 228 B.R. at 453. If, however, an individual creditor has been particularly harmed by the defendant, it has standing to assert its own claim for equitable subordination. *Id*; *see also Enron Corp. v. Springfield Associates, LLC (In re Enron Corp.),* 379 B.R. 425, 441-42 (S.D.N.Y. 2007) (trustee only has standing to argue equitable subordination for the benefit of all creditors and for the estate's benefit, not on behalf of a subset of creditors or solely to advance one claim to the detriment of another).

> Whether an individual creditor can bring an equitable subordination claim against another creditor turns on whether the creditor-plaintiff is the holder of the claim. If the creditor-plaintiff holds the claim, then the

>   creditor-plaintiff has standing to pursue its claim. If, for example, the estate holds the claim, then a representative of the estate, such as the trustee or debtor in possession, is the proper party to bring the claim. Such an analysis is necessary to promote the orderly and equitable administration of the bankruptcy estate by preventing individual creditors from pursuing separate actions to the detriment of other creditors and of the estate as a whole.

*Morpheus Lights*, 228 B.R. at 453. Determination of whether a claim involves particularized harm or general harm will depend on the facts of each case. *See id.* (determining that the creditor lacked standing to pursue equitable subordination because it did not allege particularized harm).

**Standing for Nondischargeability Claims**

The Court notes PCEF generally lacks standing to pursue denial of discharge or nondischargeability, *In re Owen-Moore*, 435 B.R. 685, 691 (Bankr. S.D. Cal. 2010).

**Application to Pending Matters**

Again, the Court is unclear as to the PCEF's position on what role AP retains on these issues, and neither party applied this case law to the details of the pending claims. The parties are to address in their further briefing how this law applies to each of the subordination and claim objection matters of these cases, which are summarized below.

>    (a)    Mercator Financial Group/West Valley Management Claims

The claims ("Mercator Claims") against Mercator Financial Group/West Valley Management ("Mercator") are as follows:

Adversary Proceeding, AP v. Mercator, Case No. 12-90346, in JR
Adversary Proceeding, AP v. Mercator, Case No. 13-90028, in RMC
Objection to claim 1-1 of Mercator filed by AP, Dk #239, in RMC
Objection to claim 1-1 of Mercator filed by AP, Dk #330, in RMC
Objection to claim 9 of Mercator filed by DR (joined by AP), Dk #734, in RMC

The adversary proceedings have been consolidated under Case No. 12-90346 and the Court requires the further briefing discuss whether the objections to claim should be consolidated under the same case number. The Mercator Claims involve: (i) whether Mercator's purported lien against RMC's partnership interest in Fairmount is an

avoidable transfer; (ii) whether Mercator's loan modification is a fraudulent transfer and is voidable due to usurious interest and failure to register as a corporation; (iii) whether Mercator's claim should be subordinated due to inequitable conduct. Standing on the objection to claims and subordination claims are also to be addressed by the parties. The Court notes that it orally gave its tentative on Mercator's standing to object to the Plan, which related to some of these issues in the adversary.   See Hearing Transcript 6/11/2012, In re James Marvin Roth, Case #10-07659, Docket #474, at 44-48.   It appears however that this ruling was not final because the parties later reached a settlement as to the Plan.

### (b)     Debra Roth Claims

The pending claims ("DR Claims") against Debra Roth (DR) are as follows:

Adversary Proceeding, AP v. DR and TMC, 11-90147, in JR
Adversary Proceeding, AP v. DR, 11-90148, in RMC
Adversary Proceeding, AP v. DR, 13-90204, in DR Bankruptcy Case 13-04909

The DR Claims involve: (i) fraudulent transfers of community property; (ii) malicious prosecution (iii) alter ego claims and (iv) subordination due to inequitable conduct.   The third adversary proceeding alleges that these acts require DR's debt to AP to be nondischargeable and require denial of DR's chapter 7 discharge.

The first two adversary proceedings were consolidated under Case No. 11-90147. These adversary proceedings have not been pursued because DR filed for bankruptcy resulting in the automatic stay, but stay relief was granted in DR's bankruptcy case on November 22, 2013.

AP appealed the order regarding granting DR's Motion to Dismiss with leave to amend to the district court.   DR believes that this deprives the Court of jurisdiction but it is unclear whether AP disputes this.   This issue should also be addressed in the further briefing. Similarly, whether the Court should consolidate this adversary with the other two adversaries after it is returned jurisdiction from the appellate courts should be addressed.

### (c)     Anice Plikaytis Claims

The claims ("AP Claims") against Anice Plikaytis (AP) are as follows:

Objection to claim 2-1 of AP filed by DR, Dk #324, in RMC
Objection to claim 5-1 of AP filed by DR, Dk #325, in RMC
Objection to claim 5-1 of AP filed by Fairmount, Dk #326, in RMC

Claim 2-1 is a duplicate of claim 5-1.The AP Claims deal with the amount of damages allocated to RMC in the state court order.   The Court ruled on the objections to the AP Claims, reducing the claim to $328,952. Order, Docket #432.   AP appealed that order so the Court lacks jurisdiction.   *Marino v. Classic Auto Refinishing, Inc.* (*In re Marino*), 234 B.R. 767, 769 (B.A.P. 9th Cir. 1999) ("The filing of a notice of appeal is an event of jurisdictional significance – it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal."). Unless remanded, the Court will take no further action on the AP Claims.

### (d)     Fairmount Claim

Adversary Proceeding, AP v. Fairmount LP, 13-90029, in RMC

The Fairmount Claim involves (i) avoidance of Fairmount lien's received to fund an appeal and (ii) subordination for inequitable conduct.   The Court notes that Fairmount's lien has already been limited to $75,000 under the confirmed plan.   See Hearing Transcript of June 11, 2012, Docket #474, at 41.   The Motion to Dismiss was granted with leave to amend. Docket #13, 20.   AP filed an amended complaint and Fairmount filed a second Motion to Dismiss that was scheduled to be heard at this hearing.

Further briefing on how the controlling law applies to the facts of the subordination matter is necessary. After ruling, the Court will set a deadline for the PCEF to oppose the Motion to Dismiss as requested.

### (e)     JR Claim

Adversary Proceeding, AP v. JR, 13-90359, in JR

The JR claim involves nondischargeability of the state court judgment.   The Court held a trial and found that $2.997 million was nondischargeable.   Both AP and JR appealed the judgment so the Court lacks jurisdiction.   *Marino*, 234 B.R. at 769.   Unless remanded, the Court will take no further action on the JR Claim.

### (f)     Estate Objections

The RMC estate filed the following objections to claims:

Objection to claim 6-1 of Arch Insurance Group (Dk #333)
Objection to claim 3-2 of Internal Revenue Service (Dk #334)

Objection to claim 4-1 of Franchise Tax Board (Dk #335)

None of these creditors has filed a response to the objection. The PCEF should address in the briefing how he proposes to resolve these objections.

The Court notes as that (i) the Claims Objections Date was January 30, 2013 (defined as the first business day after 120 days after the Effective Date of October 1, 2012); (ii)service on a state governmental organization must be brought pursuant to FRBP 7004(b)(6) which requires service pursuant to Cal. Code Civ Proc. §§ 416.50 and 415.20 and (iii) service on the Internal Revenue Service must be brought pursuant to FRBP 7004(b)(4)-(5) and if the objection to claim has not been properly served, the Court may lack personal jurisdiction over the United States to hear this matter.   See *United States v. Levoy*, 182 B.R. 827 (B.A.P. 9th Cir. 1995).

Appearances at the February 27, 2014 hearing are excused.